## SIVILS v. ALDRIDGE.

No. 6787—Opinion Filed January 2, 1917.

(162 Pac. 198.)

**1. Conversion—What Constitutes.**

"Conversion" is any distinct act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein.

**2. Same—Actions—Evidence—Sufficiency.**

The evidence in the cause is examined, and fails to establish a conversion of personal property as alleged.

(Syllabus by Campbell, C.)

Error from County Court, Seminole County; T. S. Cobb, Special Judge.

Action by F. C. Aldridge, as plaintiff, against J. E. Sivils, as defendant. Judgment for plaintiff, and defendant brings error. Reversed and remanded.

C. Guy Cutlip, for plaintiff in error.

Fowler & Biggers, for defendant in error.

Opinion by CAMPBELL, C. This action was commenced before a justice of the peace of Seminole county, and was there tried, and an appeal was taken to the county court of Seminole county. A trial de novo was there had to a jury, and a verdict was returned in favor of the plaintiff, on which a judgment was rendered by the court, after a motion for

new trial had been denied, and from such judgment the defendant appeals to this court. The pleading on behalf of the plaintiff upon which said cause was tried alleges the following facts:

"That on or about the 1st day of October, 1911, said plaintiff delivered to said defendant one bale of cotton of the reasonable market value of $47.50; that said defendant accepted and received said bale of cotton, and agreed to deliver the same to plaintiff upon demand; that on or about the 15th day of October, 1911, said plaintiff demanded said bale of cotton from said defendant, and said defendant did then and there, and has ever since that date, failed and refused to deliver said cotton, or the value thereof, to plaintiff, but has wrongfully and unlawfully converted the same to his own use."

The evidence offered by the plaintiff in support of the allegations of his pleading was to the effect that on the 1st day of October, 1911, he took a bale of cotton to the defendant's gin to have the same ginned; that his cotton was weighed and ginned, and the pressed bale was rolled out upon the platform, where it lay the last time plaintiff ever saw it; that he did not take the bale away, but asked the men in charge if he could leave it there, and was told that he could and that it would be safe, as no bale ever left without a ticket; that he came back in about a week and inquired about his bale, and was told that there were so many bales piled up in the yard it would be hard to find it; that he came back in about another week and inquired of defendant's son, who was in charge of the gin, about his bale of cotton, and at that time the yard was nearly cleaned out, and both plaintiff and defendant's son looked for the bale and could not find it, and plaintiff left, telling defendant's son to look for it; that he went back later and made demand on the defendant for the bale of cotton or its value.

The evidence tends to show that there was a considerable space about the gin, that was used by customers of the defendant for the purpose of stacking or piling bales of cotton until it was convenient to them to take them away, but no charge was made therefor. This permission was, however, extended to customers by way of inducement to secure their patronage. This particular bale of cotton was never seen after it was rolled out on the platform either by plaintiff or defendant, or any person, according to the evidence, and the evidence in no way accounts for the bale getting lost to the plaintiff.

Under the plaintiff's pleading the action is one for the conversion of the bale of cotton by the defendant. The pleading is not very carefully drawn, but is probably sufficient as

a pleading for the recovery of the value of converted personalty before a justice of the peace. If the alleged facts were established by the evidence, the plaintiff would be entitled to recover the value of the bale of cotton on the date and at the place it was converted by the defendant. It seems from the authorities upon the question that there are three things essential to a recovery in an action of this kind. The plaintiff must establish: (1) Title or right of possession to the property in dispute; (2) conversion by the defendant; and (3) value of the property.

In Aylesbury Mercantile Co. v. Fitch, 22 Okla. 475, 99 Pac. 1089, 23 L. R. A. (N. S.) 573, this court held:

"Conversion is any distinct act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein."

The above rule was announced in the later case of Bilby v. Jones, 39 Okla. 613, 136 Pac. 414.

In the case of Continental Gin Co. v. De Bord, 34 Okla. 67, 123 Pac. 159, our court had before it the question of what conduct constituted conversion, and in the opinion in that case several leading cases upon that subject are carefully reviewed. The opinion of the court in Polley v. Lenox Iron Works, 2 Allen (Mass.) 182, was approvingly quoted therein, as follows:

"A conversion of property by detaining it from the owner is by wrongfully withholding from him by a party who has possession thereof, actual or constructive, and who ought, and has the power, to put it into the owner's possession or within his control."

Also the court approved the rule announced in Fernald v. Chase, 37 Me. 289, as follows:

"There can be no conversion of property by a defendant without an actual possession of it, or the exercise of such a claim of right or of dominion over it as assumes a right to hold the possession or to deprive the other party of it. To make out a conversion, there must be proof of a wrongful possession, or of the exercise of a dominion in exclusion or defiance of the owner's right, or of an unauthorized and injurious use, or of a wrongful detention after demand."

After a review of several cases upon this question, our court, in the case of Continental Gin Co. v. De Bord, supra, concludes:

"It is apparent from this review of the authorities that actual possession by the defendant is not an indispensable requirement in an action of conversion, and that a defendant may be guilty without being in actual possession, if he exercises dominion over the property and participates in the wrongful act of one who is in actual possession, to the ex-

tent of aiding or abetting the consummation of the wrong."

As determined under the rules above noted, does the evidence in the case at par prove a conversion of the bale of cotton? It must be conceded that the evidence does not show any instance of wrongful exercise of dominion by the defendant over the bale of cotton, unless such is to be found in the fact that he failed to turn it over to the plaintiff when demand was made for it on October 15, 1911. The record is silent as to any fact of the exercise of any dominion over the plaintiff's property in denial of or inconsistent with his rights therein, unless it be founded upon the failure of defendant to turn the bale of cotton over to plaintiff when the demand was made. We cannot assume that the defendant had sold the bale of cotton, or had otherwise disposed of the same, from the mere fact that it became lost, not only to the plaintiff, but the defendant as well. To do so would be to infer an essential fact which must be positively proven under all the authorities upon the question.

However, the evidence does show that prior to the date of the demand upon the defendant by plaintiff for the return of the bale of cotton the plaintiff himself had knowledge that it was not to be found about the premises of the defendant. Both the plaintiff and defendant's son, who was the manager of the cotton gin, had made a search for it without avail. Under this condition, would the failure of defendant to turn over the bale of cotton upon such demand constitute a conversion? Under the rule announced in Polley v. Lenox Iron Works, supra, the defendant would not be guilty of conversion for failure to turn it over to plaintiff upon demand unless he ought and had the power to put it into the possession or control of plaintiff. We must say from che evidence in the case that the defendant did not have it within his power to put the plaintiff in the possession or control of the cotton when demand was made upon him for it. Not only is this true, but the defendant did not know where the cotton was. It had been lost or misplaced both to plaintiff and defendant, and of this fact the plaintiff had knowledge for several days before he made the demand. We therefore conclude that the evidence in the case fails to prove any conversion of the property by the defendant, and no verdict could have been returned by the jury against the defendant finding him guilty of conversion of the property in question.

But we observe from the instructions given by the court to the jury that the liability of the defendant was made dependent upon his failure to use slight care for the safekeeping of the cotton in question. In other words, the court instructed the jury with reference to the liability of the defendant growing out of the breach of a bailment contract. The cause was submitted to the jury upon the theory that the defendant had become a gratuitous bailee of the cotton, and as such bailee it was his duty to exercise slight care to prevent it from being lost, and that if he failed to exercise such care he was liable to the plaintiff for the value of the cotton. As we read the record in this case, the plaintiff sued in tort for the conversion of the property, and recovered under the evidence and the instructions for a breach of a bailment contract. Such a condition as is presented in this case was before the court in Aylesbury Mercantile Co. v. Fitch, supra, and the distinction between the action in conversion and for breach of contract was clearly pointed out, and it was there held that such distinction was not in form merely, but involved separate and distinct principles of law. In fact, the court there points out that a different rule as to the measure of damages exists. In the opinion in that case the court quotes from the opinion in Phelps, Dodge & Palmer v. Halsell & Frazier, 11 Okla. 1, 65 Pac. 340, wherein it was said:

"To arrive at a correct solution of the question before the court, it will be necessary to consider the law of conversion, and especially to determine the nature of the action of conversion. It may be contended that under our Code the procedure or forms of action have been abolished. While we have but one form of action in this territory, this does not mean that every action which is brought is controlled by the same rules of law. All actions which are not criminal we call civil, but this does not mean that there is now one kind of civil action. We have the same kind of actions, practically, as existed at common law. We have actions in attachment, replevin, injunction, mandamus, ejectment, etc. Each of these actions has its own rules of law, and, except when modified by statute, is subject to common-law principles. It would be impossible to conduct the business of courts without keeping in mind the essential distinctions existing between the various kinds of actions. By its very nature the practice of law must have some consistency, and when an action is brought in court, there must be some way of determining what the character of the action is, and these distinctions are by no means artificial. They are perfectly material, and are necessary to the protection of the rights of litigants, as well as for the information and guidance of the court."

After discussing the absolute duty which

the law enjoins upon one man to respect the ownership and right to the possession of another to his property, a violation of which constitutes conversion, and pointing out the statute which fixes the measure of recovery in an action in tort therefore, our court in Aylesbury Mercantile Co. v. Fitch, supra, has the following to say:

"Should the parties, however, enlarge their relationship toward each other by entering into a lawful contract involving the property of one, both are entitled to have its provision fulfilled; should either, acting under this agreement, fail, neglect, or refuse without lawful right to carry out his engagement according to the terms, his liability is measured by the second paragraph quoted, and in a case where it is insisted that either of these rights have been violated modern procedure requires that the written allegations of the parties to the action state the facts, that the proof support and be consistent therewith, and the judgment rendered be in consonance with both. These requirements are not to vindicate a mere dogmatic form prescribed to secure symmetry only, but are absolutely essential to secure the administration of justice. A party is entitled to know on entering an action just wherein and how he is charged with having violated an obligation. This constitutes notice to him so he may be prepared in his own right and to assist the court with relevant testimony to ascertain the truth He is then entitled to have the judgment rendered based on the evidence offered in support of the specific averments of the pleadings, as they may be finally settled by the court."

As we have pointed out, the pleading filed by the plaintiff in the instant case charged the defendant with having converted the property of the plaintiff to his own use, and the evidence offered under such pleading tended to show, if anything, a breach of duty under a contract of bailment to exercise slight care in the keeping of the property of the plaintiff under such bailment contract, and the judgment rendered by the trial court was upon a verdict returned by the jury under instructions which presented the case as one for breach of duty under a bailment contract. The evidence did not establish a case of conversion, and, as such was the only charge made against the defendant, the court was not warranted in submitting the case to the jury under such pleading on the theory that the defendant had breached a bailment contract in not exercising slight care in the keeping of the property of the plaintiff. We do not desire to be understood as holding that no conversion can result where property has been delivered to another under a bailment contract by an improper exercise of dominion over the property so bailed by the bailee. Bailed property can be converted,

and the action for conversion would in that case be proper, but in the instant case the proof fails to establish a conversion, and if the property in question was lost by reason of the failure of the defendant to exercise a proper degree of care, on which theory the case was submitted to the jury by the trial court, the remedy would not be in tort for conversion of the bailed property.

However much we may regret to do so, our duty compels us to reverse the judgment of the trial court and remand the cause, with directions to the trial court to proceed in accordance with this opinion.

The judgment of the trial court is reversed, and the cause remanded.

By the Court: It is so ordered.