## ATCHISON, T. & S. F. RY. CO. v. TULSA RIG, REEL & MFG. CO.

No. 14532—Opinion Filed Dec. 11, 1923.

Rehearing Denied March 4, 1924.

Second Rehearing Denied April 22, 1924.

### 1. Liens—Discharge by Tender—Conditional Tender Insufficient.

Where one is lawfully in possession of personal property belonging to another, and during such lawful possession legal charges accrue against such property for which the law gives a lien to the one in possession, before such lien can be discharged the owner must pay or tender the full amount of such legal charges, and such tender must be unconditional. A tender of less than the full amount of the legal charges covered by such lien, coupled with a condition that certain other charges, a part of which at least are legal, shall be remitted, does not constitute such a tender as will discharge the lien when refused.

### 2. Conversion—Sale to Satisfy Lien—Proceedings Not Questioned—No Conversion.

Where, after refusal of insufficient and conditional tender, lienholder continues in possession of personal property for the period of time required by law, and then sells the property in satisfaction of the lien, and where no question is raised as to the regularity of such sale proceedings under the statute authorizing same, such sale does not constitute a conversion, since it is not a "distinct act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein."

(Syllabus by Logsdon, C.)

Commissioners' Opinion. Division No. 1.

Error from District Court, Tulsa County; W. B. Williams, Judge.

Action by Tulsa Rig, Reel & Manufacturing Company against the Atchison, Topeka & Santa Fe Railway Company, for conversion of one car of oak lumber. Judgment for plaintiff, and defendant brings error. Reversed.

This action was commenced April 21, 1921, by the plaintiff filing its petition alleging, in substance, the corporate existence of both plaintiff and defendant, and that defendant is a common carrier and maintains a line of railroad into and through the city of Tulsa; that on or about June 3, 1920, plaintiff purchased from Chicago Lumber & Coal Company a car of oak lumber, which was shipped from Grigsby, Tex., to Tulsa to the order of Chicago Lumber & Coal Company, and by it diverted by proper memorandum indorsed upon the bill of lading to the plaintiff, Tulsa Rig, Reel & Manufacturing Company; that on June 11, 1920, and again on June 23, 1920, plaintiff notified the defendant in writing that on arrival of said car of oak lumber, same should be placed for unloading at the plant of the Marion Machine, Foundry & Supply Company on the tracks of the M., K. & T. Railway Company, in Tulsa, and that defendant complied with such written requests by so placing said car of lumber at the plant of the Marion Machine, Foundry & Supply Company for unloading, said car being No. 24797, and bearing the initials P. R. R.; that thereafter, and without authority, defendant removed said car from the plant of the Marion Machine, Foundry & Supply Company, unloaded the same, stored it, and converted

it to its own use; that the value of said lumber at the time it was removed and converted by the defendant was $692.74, and that by reason thereof plaintiff was damaged in said sum.

Defendant answered by general denial except as to the corporate existence of both plaintiff and defendant, and that defendant was a common carrier operating a line of railroad into and through the city of Tulsa. Further specially answering, defendant alleged that upon the arrival in Tulsa of the car of lumber mentioned in plaintiff's petition, and by virtue of the written direction of the plaintiff, said car was delivered for unloading at the plant of the Marion Machine, Foundry & Supply Company on July 16, 1920, and that on July 20, 1920, said company refused to accept said shipment and returned the same to the possession of the defendant; that thereupon notice of such refusal was given to the plaintiff, and that plaintiff permitted and suffered said car of lumber to remain in the possession of defendant and unloaded until October 28, 1920, when defendant, after due notice to plaintiff, unloaded and placed said car of lumber in storage in the city of Tulsa; that thereafter, and on April 8, 1921, defendant sold said lumber at public auction, as authorized by law, for the purpose of satisfying its lien thereon for freight, demurrage, and storage charges, and denies that it wrongfully converted the same.

Defendant also filed a cross-petition against the plaintiff in which it alleged, in substance, that the freight and demurrage and war tax thereon, labor in unloading, storage charges, insurance, and warehouse receipt amounted to a total of $1,841.30, and that defendant realized from the sale of said lumber at auction the sum of $513.36, leaving a balance due it from the plaintiff of $1,327.94, for which it prayed judgment.

By its reply plaintiff denied all of the material allegations of defendant's answer and cross-petition, and denied notice of the refusal of the Marion Machine, Foundry & Supply Company to accept said car of lumber, and denied that it was indebted to the defendant in any sum or that defendant had any right to charge demurrage, storage, and labor as alleged in its cross-petition.

Trial was had December 7, 1922, before the court without a jury, and after taking the case under advisement the court did, on January 13, 1923, render judgment in favor of the plaintiff for the sum of $692.74, with interest from December 1, 1920, at six per cent. per annum. After unsuccessful motion for new trial, defendant has brought the case to this court by petition in error with case-made attached, and assigns numerous specifications of error for the reversal of the judgment. The parties will be hereafter referred to as plaintiff and defendant, respectively, as they appeared in the trial court.

Cottingham, McInnis & Green, Frank G. Anderson, and Biddison & Campbell, for plaintiff in error.

Poe & Lundy, J. E. Curran, and R. E. Morgan, for defendant in error.

Opinion by LOGSDON. C. In the view taken of this case by this court, it will not be necessary to take up the specifications of error in their order as they are assigned and discussed by plaintiff and defendant in their briefs, but the decision of this case must rest upon the answer to the single question:

"Was plaintiff, under the record here presented, entitled to maintain this action for conversion against the defendant?"

The shipment in question was an interstate shipment, originating at Grigsby, Tex. In such case the various acts of Congress, known as the Interstate Commerce Act, are applicable. The bill of lading conformed to the requirements of sections 2 and 6, Act Aug. 29, 1916 (secs. 8604 aaaa, and 8604cc, U. S. Comp. Stat. 1916), and was a straight, nonnegotiable bill, showing by memorandum upon its face that delivery was to be made to Tulsa Rig., Reel & Manufacturing Company, at Tulsa, Okla. By section 42 of the same act this fixed the status of plaintiff as consignee.

Rules and regulations of the Interstate Commerce Commission and tariffs of the defendant filed with and approved by the commission, which are applicable to this case, were admitted in evidence. The trial court found therefrom that there was unpaid freight on this shipment amounting to $228.35, together with war tax thereon in the sum of $6.85, making a total of $236.20, and that defendant had a lien on this shipment for this amount until it was discharged by a tender made by plaintiff, which was refused by defendant.

The car was placed for unloading July 16, 1920, at the place designated by plaintiff in writing. On July 20, 1920, defendant was advised in writing by the company designated by plaintiff to do the unloading that it would not do so, and the car was turned back to defendant. Two days' demurrage had accumulated during this period and it became the duty of the defendant to collect this in addition to the freight and war tax, and it could not remit or rebate it without incurring the penalties and punishment pre-

scribed by the Interstate Commerce Act. Gault Lumber Co. v. Atchison, T. & S. F. Ry. Co., 37 Okla. 24, 130 Pac. 291; St. Louis, I. M. & S. Ry. Co. v. McNabb, 63 Okla. 87, 162 Pac. 811; St. Louis & S. F. Ry. Co. v. Pickens, 51 Okla. 455, 151 Pac. 1055; Louisville & Nashville R. Co. v. Maxwell, 237 U. S. 94, L. R. A. 1915E, 665. In this latter case it is said:

"Under the Interstate Commerce Act, the rate of the carrier duly filed is the only lawful charge. Deviation from it is not permitted upon any pretext. Shippers and travelers are charged with notice of it, and they as well as the carrier must abide by it, unless it is found by the Commission to be unreasonable. S. Covington & Cinn. R. Co. v. Covington et al., 235 U. S. 537, 35 Sup. Ct. 158, 59 L. Ed. 350. L. R. A. 1915F, 792; Ligon v. St. L. & S. F. R. Co., 184 Mo. App. 187, 168 S. W. 647; St. L., I. M. & S. R. Co. v. Spriggs, 113 Ark. 118, 167 S. W. 96."

Under these circumstances the tender was made which the trial court held sufficient to discharge the lien of defendant. It is true that after the car was turned back to defendant additional demurrage and other charges were claimed by defendant, but for the purpose of determining the sufficiency of the alleged tender to extinguish defendant's lien, it is only necessary at this time to consider the two days' demurrage which accrued before defendant was notified that the car would not be unloaded. Upon the question of tender the oral testimony of plaintiff, given by its secretary-treasurer, omitting the questions by counsel, was as follows:

"I talked to nearly everybody connected with them (defendant) over the 'phone, but the gentleman who came to our office, the man, as I remember it, was the cashier; I think Mr. Kitching—I think he is the one that came to the office. We offered to pay the freight if they would give us the lumber. They refused. We asked for the lumber and offered to pay the freight." C.-M. p. 45.

In addition to the above oral testimony the only other evidence of tender introduced by plaintiff was that contained in a letter from plaintiff to E. C. Kitching, district freight agent of defendant at Tulsa. This letter was plaintiff's "Exhibit 10," and only that portion of it relating to the alleged tender was admitted by the court. The sentence admitted in evidence reads as follows:

"We prefer to let you take the car for the charges and file our claim for the value of the car; however, if you can waive the demurrage accrued we will pay the freight and unload it." C.-M. pp. 53, 54.

Section 8604dd, U. S. Comp. Stat. 1916, so far as applicable here, provides:

"A carrier, in the absence of some lawful excuse, is bound to deliver goods upon a demand made either by the consignee in the bill for the goods or, if the bill is an order bill, by the holder thereof, if such demand is accompanied by—

"(a) An offer in good faith to satisfy the carrier's lawful lien upon the goods."

The testimony above set out falls far short of an unconditional tender or an "offer in good faith to satisfy the carrier's lawful lien." It amounts to no more than a proposition from plaintiff that if defendant will rebate it the amount of demurrage and taxes lawfully due, together with those in dispute, then plaintiff will pay the freight and unload the car. This, defendant could not lawfully do, and plaintiff is charged with knowledge of this law. Such an offer could not have been made in good faith with the intention or expectation that it should be accepted. A tender, in order to discharge a lien, must be of the full amount lawfully due and must be unconditional. Bly v. Pool, 60 Okla. 77, 159 Pac. 511; Isbell v. Walton Trust Co., 63 Okla. 182, 163 Pac. 716; Bell v. Riggs, 34 Okla. 834, 127 Pac. 427; Goss v. Sorrell, 33 Okla. 586, 127 Pac. 435; Porter v. Wold, 34 Okla. 253, 127 Pac. 432; Smith-Wogan Hardware & Imp. Co. v. Bice, 34 Okla. 294, 125 Pac. 456. Until such a tender was made and refused defendant's lien was not discharged. Being lawfully in possession of the car of lumber, it was entitled to retain possession until its lawful charges and lien were satisfied. No contention is made here that the proceedings of the defendant to enforce its lien by sale of the lumber under the provisions of section 4916, Comp. Stat. 1921 (Rev. Laws 1910, sec. 825), were not in all respects regular and in conformity with the provisions of the statute. Such being the case, there was no conversion by reason of such sale under the circumstances here shown.

"Conversion is any distinct act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein." Aylesbury Mercantile Co. v. Fitch, 22 Okla. 475, 99 Pac. 1089.

Following and approving this rule in this state are: Dodd-Lear Hardwood Lumber Co. v. Gyr, 44 Okla. 630, 146 Pac. 16; Sivils v. Aldridge, 62 Okla. 89, 162 Pac. 198; Shelton v. Jones, 66 Okla. 83, 167 Pac. 458; First Nat. Bank of McCloud v. City Nat. Bank, 71 Okla. 52, 175 Pac. 253; Mayo v. Thede, 73 Oklahoma, 175 Pac. 348; Collinsville Nat. Bank v. Esau, 74 Oklahoma, 176 Pac. 514. McClintock v. Parish, 72 Okla. 180 Pac. 689.

There being no wrongful conversion of

the lumber at the time of sale, under the facts shown in this record, it follows that plaintiff was not entitled to maintain this action. What plaintiff's remedy may be in reference to the demurrage and other charges made against this shipment subsequent to July 20, 1920, is not before this court for determination.

It follows, from what has been said, that the judgment of the trial court should be reversed, with directions to dismiss the action.

By the Court: It is so ordered.